IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>   )<br>   Plaintiff,   )<br>   )<br>v.   )<br>   )<br>JESUS TRUJILLO CONTRERAS,   )<br>   )<br>   Defendant.   )<br>   ) | 8:10CR94<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the defendant's objection, Filing No. 29, to the Findings and Recommendation ("F&R") of the magistrate judge. *See* Filing No. 26, F&R; Filing No. 28, Transcript (Tr.) at 19-29. The magistrate judge recommended denial of the defendant's motion to suppress, Filing No. 19. The defendant has been charged with possession with intent to distribute less than 500 grams of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1), and with being an alien who, after a conviction for an aggravated felony and deportation, illegally re-entered the United States, in violation of 8 U.S.C. § 1326(a). *See* Filing No. 1, Indictment.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a de novo determination of those portions of the F&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the record including the transcript of the hearing on the motion to dismiss held on June 17, 2010. *See* Filing No. 28, Tr.

I. BACKGROUND

The court adopts the factual findings of the magistrate judge. The facts are set forth in the transcript of the hearing and need not be fully repeated here. *See id*. at 19-22. Briefly, Nebraska State Patrol Investigator Jason Scott testified that he works at the Greyhound bus station in Omaha, Nebraska, as part of the commercial interdiction unit. *Id.* at 4-5. The commercial interdiction unit watches for "people transporting contraband, i.e., guns, drugs, large amount of currency, anything that's not supposed to be on the bus." *Id.* at 8.

On February 10, 2010, he observed the defendant exit an eastbound bus from Denver. *Id.* at 6. The defendant walked out to the sidewalk, where a red Jeep was parked at the curb. *Id.* at 6. The defendant was carrying bags, but had no checked luggage. *Id.* Investigator Scott wore plain clothes and his weapon was concealed. *Id.* at 5-6. Investigator Scott approached the defendant, told him he was not under arrest, and asked to speak to him. *Id.* at 7. At about that time, the Jeep sped off and ran a red light. *Id.* at 6. The defendant showed Investigator Scott an identification card and a bus ticket that had been purchased with cash immediately before departure. *Id.* at 8. Investigator Scott asked the defendant where he was going and the defendant responded that a friend was picking him up, but could not remember the friend's name. *Id.* The conversation was in English and there is no indication that the defendant did not understand the questions. *Id.* at 7.

After returning the bus ticket and identification to the defendant, Investigator Scott asked for consent to search the defendant's person and his luggage. *Id.* at 8. Defendant responded "yes" and placed one of the bags at Investigator Scott's feet. *Id.* at 8-9.

Investigator Scott conducted a pat-down search of the defendant and found "two bundles that were duct taped to [the defendant's] ankles." *Id.* at 9, 13. Believing the bundles to be "contraband of some sort," Investigator Scott hand-cuffed the defendant, took him to the back room of the bus station, Mirandized him, opened the bundles and found cocaine. *Id.* at 9, 13-15. He then questioned the defendant about the source of the drugs. *Id.* at 9. Investigator Scott testified that the commercial interdiction unit "frequently run[s] into people who are smuggling contraband in that fashion." *Id.* at 15.

In his Motion to Supress, the defendant challenged the lawfulness of the stop, the pat-down search, and the arrest, as well as the admissibility of incriminating statements. Filing No. 19, Motion to Suppress. At the close of the hearing on the motion, the magistrate judge found that Investigator Scott's initial contact and conversation with the defendant was a consensual encounter that did not implicate the Fourth Amendment. Filing No. 28, Tr. at 23. Applying the factors listed in *United States v. Chaidez*, 906 F.2d 377 (8th Cir. 1990), the magistrate judge found under the "totality of the circumstances," that the defendant voluntarily and knowingly consented to the search of his person and his bags. *Id.* at 25. The magistrate judge further found that the defendant's consent was never withdrawn and "continued on" into the back room where the bags were opened and the cocaine was found. *Id.* at 25-27. Although the magistrate judge concluded that "the consent is sufficient to carry the day," he noted that "the officer based upon the mere presence of bags, plastic bags wrapped around the defendant's ankles, did not have probable cause to arrest." *Id.* at 25-26.

3

The defendant objects to the magistrate judge's factual finding that Investigator Scott observed plastic baggie-type material duct-taped to the defendant's ankles, contending that Investigator Scott testified only that he saw "a duct-taped mass." He also objects to the magistrate judge's factual finding that the bus ticket was purchased with cash just prior to departure, arguing that Investigator Scott testified only that it was a "last minute" purchase. The defendant further challenges the magistrate judge's legal conclusion that the defendant's consent justified the search and argues that the consent cannot survive an unlawful arrest. Relying on *United States v. Jones*, 254 F.3d 692 (8th Cir. 2001), he argues that the mere presence of a bulge under clothing does not furnish probable cause for an arrest, and contends that the "fruit of the poisonous tree" doctrine mandates exclusion of the evidence obtained after the unlawful arrest. *See* Filing Nos. 29 & 30, Objection and Brief.

II.   DISCUSSION

A.   Law

"A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area." *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007). A consensual encounter may remain consensual even after a request to search. *See United States v. Drayton*, 536 U.S. 194, 206 (2002) (finding that an encounter remains voluntary even after officers ask bus passengers to submit to search of luggage and persons). "A seizure occurs if 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting

4

*United States v. Mendenhall*, 446 U.S. 544, 554 (1980)); *see also Florida v. Bostick*, 501 U.S. 429, 436 (1991) (holding that a consensual encounter ripens into a seizure that implicates Fourth Amendment protections only when all the circumstances surrounding the encounter would lead a reasonable person to believe that he was not free to decline the officers' requests or otherwise terminate the encounter). "A seizure occurs when the officer, 'by means of physical force or show of authority, has in some way restrained the liberty' of a suspect." *United States v. Flores-Sandoval*, 474 F.3d 1142, 1144 (8th Cir. 2007) (quoting *United States v. Barry*, 394 F.3d 1070, 1074 (8th Cir. 2005)). The determination of whether a seizure occurs, "which rests on a reasonable person's belief about the surrounding circumstances, is a legal characterization," and thus a question of law for the court. *United States v. McKines*, 933 F.2d 1412 (8th Cir. 1991) (en banc).

A consensual encounter is not a seizure, thus the Fourth Amendment is not implicated. *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010). Under *Terry v. Ohio*, 392 U.S. 1, 6-7 (1968), an officer may briefly detain a citizen "if the officer has a reasonable suspicion that 'criminal activity may be afoot.'" *United States v. Ortiz-Monroy*, 332 F.3d 525, 528 (8th Cir. 2003) (quoting *Terry*, 392 U.S. at 30). In a *Terry* investigatory stop, a warrantless pat-down search is authorized for the protection of the officer if the officer has a reasonable articulable suspicion that the person may be armed and presently dangerous. *United States v. Muhammad*, 604 F.3d 1022, 1026 (8th Cir. 2010). Because the protection of the officer is the sole justification for the search, its scope must be confined to a search reasonably designed to discover concealed weapons. *Id.*

When the seizure of a person amounts to an arrest, it must be supported by an arrest warrant or by probable cause. *Kaupp v. Texas*, 538 U.S. 626, 630 (2003);

5

*Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed").  A consensual encounter or investigative detention can ripen into a situation resembling a traditional arrest, triggering the requirement of probable cause.  *Hayes v. Florida*, 470 U.S. 811, 816 (1985) ("at some point in the investigative process, police procedures can qualitatively and quantitatively become so intrusive with respect to a suspect's freedom of movement and privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments"); *Florida v. Royer*, 460 U.S. 491, 503 (1983) (holding that stopping a person at the airport, seizing his luggage, and taking him to a small room for questioning constituted an arrest).

Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  Probable cause exists when the facts known to the arresting officer would cause "a man of reasonable caution" to believe that an offense has been or is being committed by the person to be arrested.  *Dunaway v. New York,* 442 U.S. 200, 208 n.9 (1979); *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007).  A "'probability or substantial chance of criminal activity, rather than an actual showing of criminal activity' is sufficient." *United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008) (quoting *Torres-Lona*, 491 F.3d at 756).

The probable-cause standard cannot be defined or quantified "because it deals with probabilities and depends on the totality of the circumstances." *Pringle*, 540 U.S. at 371.  However, "'[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt'" that "must be particularized with respect to the person to be searched or

6

seized." *Id.* (quoting *Ybarra v. Illinois,* 444 U.S. 85, 91 (1979))*; see also United States v. Chauncey,* 420 F.3d 864, 871 (8th Cir. 2005)*.*  The existence of probable cause must be "viewed from the standpoint of an objectively reasonable police officer." *Ornelas v. United States,* 517 U.S. 690, 696 (1996)*.* "To determine whether an officer had probable cause to arrest an individual, [the court] examine[s] 'the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008) (quoting *Pringle*, 540 U.S. at 371).

The Eighth Circuit Court of Appeals has addressed the issue of probable cause in the context of suspicious "bulges" or bulkiness under the clothing of suspects with varying results.  *See, e.g.*, *United States v. Jones*, 254 F.3d 692, 697-98 (8th Cir. 2001) (holding that where defendant's conduct—walking around a phone bank, looking behind him, and traveling without luggage from Los Angeles—were not sufficiently suggestive of crime to amount to reasonable suspicion, the officer's touching a bulge on a defendant's person during a consensual search did not provide probable cause for an arrest where the defendant had explained that the bulge was from recent surgery); *United States v. Mendoza-Cepeda,* 250 F.3d 626, 629 (8th Cir. 2001) (holding that a patdown of a defendant's torso was valid because the defendant knowingly and voluntarily consented); *United States v. Favela,* 247 F.3d 838, 840 (8th Cir. 2001) (finding probable cause to arrest when, as part of a consensual encounter, the defendant offered no explanation for a suspicious bulge under a loose fitting shirt)*; United States v. Eustaquio*, 198 F.3d 1068, 1070 (8th Cir.1999) (holding that touching a bulge in the defendant's clothing without consent, and in the absence of reasonable suspicion, violated the defendant's Fourth

7

Amendment rights); *United States v. Tovar-Valdivia*, 193 F.3d 1025, 1026-27 (8th Cir. 1999) (finding no probable cause when the officer testified that after he observed and touched bulges on the defendant's torso, he did not know they were contraband, but knew only that they were not part of the defendant's anatomy, and stating "[t]he bulges could have been bandages about his body, a money belt worn about his ribs, or any number of non-contraband items"); *United States v. Harvey*, 946 F.2d 1375, 1378 (8th Cir. 1991) (per curiam) (holding that when a law enforcement officer spotted a bulge in a suspect's pants leg, the known facts became sufficient to establish probable cause); *United States v. Ilazi*, 730 F.2d 1120 (8th Cir. 1984) (probable cause to arrest existed when defendant refused to explain bulge on the inside of his boot). The Eighth Circuit acknowledges that the question of probable cause in such a case "depends on its particular facts" and notes that a situation involving voluntary consent and a suspicious bulge under clothing presents "a close case." *Jones*, 254 F.3d at 698.[1]

---

[1] In cases from other circuits, an observed bulge or bulkiness suggesting the smuggling of contraband has been held, alone and with other facts, to support a reasonable suspicion of criminal activity or probable cause to arrest. *See, e.g., United States v. Lamela,* 942 F.2d 100, 102 (1st Cir. 1991) (inconsistent responses to routine questions and a pat-down that revealed a conspicuous bulge around the defendant's midriff were more than sufficient to raise a "reasonable suspicion" in the mind of an experienced law enforcement agent to justify a border search); *United States v. Flowers,* 909 F.2d 145, 147-48 (6th Cir. 1990) (finding that law enforcement officers had probable cause to seize cocaine in plastic bags taped to stomach of former plane passenger after a consensual search); *United States v. Tomaszewski,* 833 F.2d 1532, 1535 (11th Cir. 1987) (pie-shaped bulge under jacket and evasive action provided probable cause to arrest and search defendant); *United States v. Lehmann,* 798 F.2d 692, 695-96 (4th Cir. 1986) (bulge similar to that found on six people previously arrested carrying cocaine concealed in a package in their crotch area on same airline from same city, together with the defendant's attempt to conceal, lack of innocent explanation and conduct fitting the "modus operandi" of recent drug couriers provided probable cause to arrest); *United States v. Palen,* 793 F.2d 853 (7th Cir. 1986) (bulge inside breast pocket and purchase of a first class airline ticket with cash under a false name furnished probable cause to believe bulge contained illegal drugs and probable cause to search and arrest the defendant); *United States v. Elsoffer,* 671 F.2d 1294, 1297 (11th Cir. 1982) (finding the observation of a bulge "shaped like a good-sized softbound book on the front of [the defendant's] trousers from waistline to crotch" provided a sufficiently specific and articulable basis to justify a seizure and probable cause for the defendant's arrest); *United States v. Roundtree,* 596 F.2d 672, 674 (5th Cir. 1979) (bulge on leg that suspect attempted to conceal gave rise to reasonable suspicion); and *United States v. Rieves,* 584 F.2d 740, 744 (5th Cir. 1978) (a Customs agent's observation of unnatural contours in the bust, leg, and crotch areas of a defendant fitting the "smuggling profile" traveling from Colombia furnished a constitutionally sufficient reason to believe that a search would produce contraband).

In the related context of a protective pat-down for weapons in connection with a *Terry*-type investigative detention, the Supreme Court has approved a "plain feel" exception to the warrant requirement, analogous to the "plain view" doctrine. *Minnesota v. Dickerson,* 508 U.S. 366, 375 (1993); *see United States v. Hughes,* 15 F.3d 798, 802 (8th Cir. 1994) (stating that if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons under *Terry*). The "plain feel" exception authorizes seizure of contraband found in a protective pat-down for weapons, but requires "that the incriminating character of the contraband be 'immediately apparent' during the frisk." *Hughes,* 15 F.3d at 802. The officer conducting a pat-down search must have probable cause to believe the item in plain touch is contraband. *Dickerson,* 508 U.S. at 376. "Regardless of whether the officer detects the contraband by sight or by touch . . . the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures." *Id. see also United States v. Bustos-Torres,* 396 F.3d 935, 944-45 (8th Cir. 2005). To give rise to probable cause, the incriminating character of the object must be immediately identifiable. *Bustos-Torres,* 396 F.3d at 945. "[T]he object must be one 'whose contour or mass makes its identity immediately apparent.'" *Id.* (quoting *Dickerson,* 508 U.S. at 375). "'Immediately apparent' in the Fourth Amendment context means that the officer performing the search has 'probable cause to believe an item is incriminating.'" *Muhammad,* 604 F.3d at 1027-28 (quoting *United States v. Green*, 560 F.3d 853, 858 (8th Cir. 2009)). Probable cause "does not require absolute certainty; it only requires 'that the facts available to a reasonably

9

cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of the crime.'" *Muhammad*, 604 F.3d at 1028 (quoting *Green*, 560 F.3d at 858).

Statements and other evidence obtained after an illegal arrest or search should be excluded as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). A voluntary consent to search that is preceded by an illegal police action, does not automatically purge the taint of an illegal detention. *United States v. Esquivel*, 507 F.3d 1154, 1160 (8th Cir. 2007). Where illegal police conduct precedes consent, the government has the burden of proving that the consent "was given in circumstances that render it an independent, lawful cause of the officer's discovery" in order to purge the taint of the illegal conduct. *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1111 (8th Cir. 2007); *United States v. Kreisel*, 210 F.3d 868, 869 (8th Cir. 2000) (noting that in order to purge the taint of an illegal stop, the consent must be "sufficiently an act of free will"). To determine whether an intervening consent to search "is sufficiently an act of free will to purge the primary taint" of a Fourth Amendment violation, the court considers: (1) the temporal proximity between the Fourth Amendment violation and the grant of consent to search; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the officer's Fourth Amendment violation. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). Of these, "the purpose and flagrancy of the official misconduct is 'the most important factor because it is directly tied to the purpose of the exclusionary rule-deterring police misconduct.'" *Herrera-Gonzalez*, 474 F.3d at 1111 (quoting *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006)). "Purposeful and flagrant" police misconduct

10

has been found "where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up." *Simpson,* 439 F.3d at 496.

The inevitable discovery and independent source exceptions to the exclusionary rule provide that "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means" or that "the challenged evidence has an independent source," the evidence will not be excluded. *Nix v. Williams,* 467 U.S. 431, 443-44 (1984). These doctrines are based on the rationale that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Id.* at 443; *United States v. Thomas,* 524 F.3d 855, 859 (8th Cir. 2008).

      B.    Analysis

The court agrees with the magistrate judge's finding that the defendant knowingly and voluntarily consented to a search of his person and luggage. The court further finds that the handcuffing of the defendant amounted to a seizure of his person that triggered Fourth Amendment protections. Although the defendant consented to the search of his person and luggage, he did not consent to the seizure. The court need not decide the thorny issue of whether the discovery of the duct-taped packets around the defendant's ankles furnished probable cause for the seizure because the court agrees in substance

with the magistrate judge's conclusion that the defendant's consent "carries the day" and supports the post-seizure search of the defendant.

Assuming that the seizure was improper, the "fruit of the poisonous tree" doctrine does not mandate exclusion because the defendant's consent to search was not obtained through exploitation of the purported illegality. Police misconduct, if any, in effecting the seizure could not have influenced the defendant's consent, since the unlawful seizure occurred after the consent was voluntarily given. Further, the court finds the police actions, even if improper, would not have amounted to purposeful or flagrant misconduct. As noted above, whether the discovery of bulky objects affixed to the person of a traveler amounts to probable cause for arrest is a close question. The officers would not have known that their conduct was likely unconstitutional, and the arguable misconduct was not investigatory in design. The officers had no need to seize or arrest the defendant in order to conduct the search, since the defendant had already consented to the search. Absent the seizure and handcuffing of the defendant, the police would have proceeded with the consensual search of the defendant and would have discovered the contraband. The defendant consented to a search that inevitably would have lead to the discovery and seizure of the contraband wrapped around his ankles. To hold otherwise would place law enforcement in a worse position that it would have been in without the arguable misconduct. Any arguably premature arrest of the defendant did not serve to void the permission to search that the defendant had earlier freely and voluntarily given to the officers and therefore does not require suppression of the seized contraband.

Based on the above analysis, the court need not address whether Investigator Scott's discovery of bundles duct-taped to the defendant's ankles provided probable cause to arrest the defendant for possession of contraband.[2]  Accordingly, the court finds the defendant's objections to the findings of the magistrate judge should be overruled, the findings of the magistrate judge should be adopted in part, as set forth in this Memorandum and Order, the magistrate judge's recommendation should be adopted, and the defendant's motion to suppress should be denied.

IT IS ORDERED:

1.  Defendant's objection (Filing No. 29) to the Findings and Recommendation of the magistrate judge is overruled.

2.  The Findings and Recommendation of the magistrate judge (Filing Nos. 26 & 28) are adopted in part, in accordance with this Memorandum and Order.

3.  Defendant's motion to suppress (Filing No. 19) is denied.

DATED this 6th day of August, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

[2] Because it is not necessary to reach the issue, the court does not adopt the magistrate judge's finding that "the officer based upon the mere presence of bags, plastic bags wrapped around the defendant's ankles, did not have probable cause to arrest."

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.